STATE OF NEW JERSEY, PLAINTIFF–APPELLANT AND CROSS–
RESPONDENT, v. DANIEL GARDNER,
DEFENDANT–RESPONDENT AND CROSS–APPELLANT.

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT AND CROSS–
RESPONDENT, v. ARTHUR BRIAN SCHWARZ,
DEFENDANT–RESPONDENT AND CROSS–APPELLANT.

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT AND CROSS–
RESPONDENT, v. JOHN VAN NOSTRAND,
DEFENDANT–RESPONDENT AND CROSS–APPELLANT.

Argued January 5, 1988—Decided January 18, 1989.

*Cathleen Russo Delanoy,* Deputy Attorney General, argued the cause for appellant and cross-respondent (*W. Cary Edwards,* Attorney General of New Jersey, attorney).

*Philip De Vencentes* argued the cause for respondent and cross-appellant Daniel Gardner (*Galantucci & Patuto,* attorneys).

*Steven B. Lieberman* argued the cause for respondent and cross-appellant Arthur Brian Schwarz (*Bowers, Murphy, O'Brien & Lieberman,* attorneys).

*Susan J. Abraham,* Assistant Deputy Public Defender, argued the cause for respondent and cross-appellant John Van Nostrand (*Alfred A. Slocum,* Public Defender, attorney).

The opinion of the Court was delivered by

CLIFFORD, J.

Defendants, volunteer firemen, indicted for the second-degree crime of aggravated arson, pleaded to the third-degree offense of arson. As first offenders they were therefore entitled to the presumption of non-incarceration. The trial court, concluding that the presumption had been overcome, sentenced defendants to custodial terms.

A majority in the Appellate Division, in the only one of the three opinions below that is reported, agreed that the presumption against imprisonment had been overcome, but concluded nevertheless that custodial sentences "shock[ed] the judicial conscience," *State v. Gardner*, 215 *N.J.Super.* 84, 93 (1987), wherefore it remanded for resentencing. That court, whose decision preceded by two months our opinion in *State v. Hartye*, 105 *N.J.* 411 (1987), ruled that once a trial court concludes that the presumption of non-imprisonment has been overcome, a defendant should be given a split sentence rather than a straight prison term in a state correctional facility. 215 *N.J.Super.* at 93. That ruling runs counter to our holding in *Hartye*, in which we held that once the presumption of non-imprisonment has been overcome, a defendant must be sentenced in accordance with the statutory guidelines in *N.J.S.A.* 2C:44–1 and 2C:43–6.

One member of the panel below, concurring in part and dissenting in part, disagreed that the presumption against imprisonment had been overcome. Because he was of the view that the imposition of a custodial term, even as a condition of probation, would violate the legislative presumption against imprisonment, 215 *N.J.Super.* at 95, he concluded that the proper sentence here would be non-custodial probation. *Id.* at 98. That too is inconsistent with *Hartye*. In unreported opinions the Appellate Division reached identical results on the appeals of defendants Schwartz and Van Nostrand.

All three defendants appealed as of right to this Court on the basis of the partial dissent below, *R.* 2:2–1(a)(2). They attack

the finding that the statutory presumption against incarceration had been overcome. In addition, we granted the State's petition for certification, *State v. Gardner*, 108 *N.J.* 213 (1987), primarily to resolve the aforementioned conflict between the Appellate Division opinion in this case and our decision in *State v. Hartye, supra,* 105 *N.J.* 411.

Our disposition of the appeals results in a remand for resentencing in all three cases.

I

Defendants, Daniel Gardner, John Van Nostrand, and Arthur Schwarz, were members of the Elizabeth Avenue volunteer fire company in South Bound Brook. On October 13, 1984, defendants were drinking alcoholic beverages and driving through Bound Brook in a jeep owned by Van Nostrand. Their peregrinations took them past an unoccupied house in Franklin Township, which they collectively decided to set afire. In pursuit of that purpose they proceeded to their firehouse, located some gasoline and a highway flare, and returned to the abandoned house. Van Nostrand remained in the jeep and Gardner stood in the driveway while Schwarz doused the inside of the house with gasoline and set it on fire with the flare. The trio waited outside the house for several minutes before returning to the firehouse.

When the Franklin Township police and fire departments arrived at the scene in response to a neighbor's report of a fire, the house was engulfed in flames. The neighbor who had reported the fire disclosed that a maroon jeep with a canvas top had driven slowly past the house several times. He also told police that he had seen the jeep stop in front of the house just before he first noticed the fire. Shortly thereafter, a patrolman noticed a jeep that matched the eyewitness's description, parked behind the Elizabeth Avenue firehouse. The eyewitness identified the jeep as the one that he had seen earlier. A motor

vehicle check revealed that the jeep belonged to defendant Van Nostrand.

The police investigation into the cause of the fire disclosed that gas and electric service to the house had been disconnected, thereby ruling out any possibility that a utility malfunction was the cause. Based in part on eyewitnesses' accounts, investigators concluded that an accelerant had been used to start the fire. Police then communicated with Van Nostrand, informed him of his rights, and questioned him in connection with the fire. Van Nostrand admitted his involvement and implicated his codefendants.

None of the defendants had a criminal or juvenile record before the instant offense. Defendant Gardner, age nineteen at the time of the incident, was a member of a first aid squad in addition to serving as a volunteer fireman. He was regularly employed and supported his divorced mother, who was unable to work due to illness. Defendant Schwarz, age twenty-two at the time of the fire, was the assistant chief of the fire company. He also had a solid employment history and helped to support his mother and family, including a handicapped sister. Defendant Van Nostrand was eighteen at the time of the crime, and he also was a member of a first aid squad.

As already indicated, all three defendants were indicted for aggravated arson contrary to *N.J.S.A.* 2C:17–1(a), a second-degree crime, and all three entered guilty pleas to a reduced charge of arson, contrary to *N.J.S.A.* 2C:17–1(b), a third-degree crime.

At the sentencing hearing the court apparently found that at least two mitigating circumstances applied in each case, namely, that the defendants had no prior record, *N.J.S.A.* 2C:44–1(b)(7), and that the defendants were particularly likely to respond affirmatively to probationary treatment, *N.J.S.A.* 2C:44–1(b)(10). Nevertheless, the court found that the mitigating factors were outweighed by two perceived aggravating factors, *i.e.*, the need to deter, *N.J.S.A.* 2C:44–1(a)(9), and the

seriousness of the risk of harm. Accordingly, the court concluded that the presumption against incarceration normally applicable to a third-degree offense, see *N.J.S.A.* 2C:44–1(e), had been overcome, and it therefore sentenced defendants to indeterminate terms not to exceed five years at the Youth Correctional Facility at Yardville. See *N.J.S.A.* 2C:43–5; *N.J. S.A.* 30:4–148.

Defendants' appeals were initially argued before an Excessive Sentence panel, which postponed decision on the merits pending receipt of briefs on the question of whether the original sentences violated the sentencing standards applicable to first offenders. Thereafter a full Appellate Division panel vacated the sentences and remanded for resentencing. In *State v. Gardner, supra,* 215 *N.J.Super.* 84, the majority deferred to the trial court's conclusion that the presumption against imprisonment had been overcome, *id.* at 91, but nevertheless determined that the custodial term imposed "shock[ed] the judicial conscience." *Id.* at 93. The majority concluded that at least seven mitigating circumstances were applicable, *id.* at 91–92, and held that even where, as here, the presumption against imprisonment applicable to third-degree offenses has been overcome, the presence of such "substantial" mitigating factors required that the sentencing court "consider imposition of a probationary sentence, with a custodial aspect, if the aggravating factors qualitatively justify overcoming the presumption against imprisonment." *Id.* at 92. Under the stated line of analysis, the majority concluded that Gardner, as a first offender, should have been sentenced to a period of conditional probation. *Id.* at 94. The court observed that imprisonment might be warranted in this case, but held that "whatever custodial sentence is imposed should be as one of several meaningful conditions of probation * * *." *Ibid.* On remand, the sentencing court was to allow further development of the factual record concerning the condition of the building, its scheduled demolition, and whether or not defendants were aware of any plans to demolish it. *Ibid.*

One judge concurred in part and dissented in part, disagreeing with his colleagues only to the extent that the majority "would impose any custodial sentence" on defendant. *Id.* at 95. The dissenting judge found no support in the record for the trial court's conclusion that the statutory presumption against incarceration had been overcome. *Ibid.* Accordingly, he would have remanded for resentencing with a direction to the trial court that no custodial sentence could be imposed. *Id.* at 98.

## II

We begin with the by-now-familiar admonitions that in reviewing a sentence, an appellate court should not substitute its judgment for that of the lower court, and that a sentence imposed by a trial court is not to be upset on appeal unless it represents an abuse of the lower court's discretion. *E.g., State v. Roth*, 95 *N.J.* 334, 362–65 (1984), and the authorities cited therein. In *Roth*, we summarized as follows the criteria to be used on appeal to determine whether the sentencing court abused its discretion: an appellate court should

(a) review sentences to determine if the legislative policies, here the sentencing guidelines, were violated; (b) review the aggravating and mitigating factors found below to determine whether those factors were based upon competent credible evidence in the record; and (c) determine whether, even though the court sentenced in accordance with the guidelines, nevertheless application of those guidelines to the facts of this case makes the sentence clearly unreasonable so as to shock the judicial conscience. [*Id.* at 364–65.]

We cautioned further that "[w]hat we seek by our review is not a difference in judgment, but only a judgment that reasonable people may not reasonably make on the basis of the evidence presented," and that "[w]hen conscientious trial judges exercise discretion in accordance with the principles set forth in the Code and [relevant case law], they need fear no second-guessing." *Id.* at 365; *cf. State v. Dunbar*, 108 *N.J.* 80, 83 (1987) (a sentence within the statutory guidelines "may strike us as a harsh sentence, but that is a consequence of the legislative scheme and not a clear error of judgment by the trial court.").

Our inquiry on these appeals focuses on the first of the criteria stated in *Roth*, namely, whether the Code's sentencing guidelines were followed. In *N.J.S.A.* 2C:44–1(e), the Code provides for a presumption against imprisonment for defendants such as those in this case:

> The court shall deal with a person convicted of an offense other than a crime of the first or second degree, who has not previously been convicted of an offense, without imposing sentence of imprisonment, unless, having regard to the nature and circumstances of the offense and the history, character and condition of the defendant, it is of the opinion that his imprisonment is necessary for the protection of the public under the criteria set forth in [*N.J.S.A.* 2C:44–1(a)].

The statute makes it clear that a first-time offender convicted of a third-degree crime is entitled to a presumption against imprisonment, and that the presumption can be overcome *only* by a conclusion that "his imprisonment is necessary for the protection of the public under the criteria set forth" in *N.J.S.A.* 2C:44–1(a), with additional reference to "the nature and circumstances of the offense and the history, character and condition of the defendant." *Ibid.* That this presumption, which controls the "in or out" decision, is a strong one is evidenced by a comparison with the "clear and convincing" standard for either downgrading a sentence or imposing a parole disqualifier. We made the point in *State v. Hodge*, 95 *N.J.* 369 (1984):

> That the Legislature intended to alter the traditional weighing of aggravating and mitigating factors in making the "in or out" decision is further seen in its choice of the standard of proof that the court be "clearly convinced" that aggravating or mitigating factors "substantially outweigh" the other in choosing either to downgrade a sentence or add a period of parole ineligibility. *N.J.S.A.* 2C:44–4(f)(2) and 2C:43–6(b).
>
> \*    \*    \*    \*    \*    \*    \*    \*
>
> \* \* \* Since confidence in this decision to downgrade or add parole ineligibility requires this higher standard, *the Code must have contemplated an even higher standard to give confidence to the "in or out" decision.* [*Id.* at 376 (emphasis added).]

Therefore, before the presumption against imprisonment of a first offender who pleads guilty to a crime of the third degree may be overcome, the sentencing court must be persuaded by a standard that is higher than "clear and convincing"

evidence that incarceration is necessary. And once the presumption has been overcome, the defendant *must* be sentenced according to the statutory guidelines. *State v. Hartye, supra,* 105 *N.J.* at 417. For a third-degree offense, that would entail a prison term ranging from three to five years, *N.J.S.A.* 2C:43–6(a)(3), with a presumptive term of four years. *N.J.S.A.* 2C:44–1(f)(1)(d).

■ The first question, then, is whether imprisonment of these defendants is required for the protection of the public in light of the statutory aggravating factors set forth in *N.J.S.A.* 2C:44–1(a). At sentencing the trial court gave the following reasons for the sentences:

The facts of this case are relatively clear. You and your codefendants, who are all members of a volunteer fire department, had been drinking on the night of the incident. You were apparently on your way to the fire house, observed the abandoned building, decided to set it on fire, drove to the fire house, got some gasoline and then went back to the abandoned house and set it on fire. Needless to say, this reckless act exposed other volunteer fire fighters and policemen who responded to the alarm, to the risk of serious injury and there is clear need to deter this conduct.

In mitigation I note you have no prior record and you are likely to respond affirmatively to supervision.

Arson takes a tremendous toll in human life and property damage. It is not a mere prank, nor can the risk it causes be excused by saying that the arsonist had been drinking or was drunk. In this case, while you and your co-defendants may have been drinking, you were sober enough to go to the firehouse to get gasoline and return to the scene and start the fire.

The seriousness of the risk of harm and the need to deter not only outweighs the mitigating factors but overcomes the presumption of non-incarceration.

\*       \*       \*       \*       \*       \*       \*       \*

When one who takes on, for whatever reason, voluntary or pay, to fight fire and then becomes involved in actually starting fire, it must be made clear that we will not tolerate this. We have enough problems with the fires for which no human is responsible for, lightning, spontaneous combustion. We are not going to tolerate fires which are caused by humans. I feel the need to deter is very strong.

The quoted passage from the sentencing transcript refers to only two potential aggravating factors: (a) "[t]he seriousness of the risk of harm" and (2) "the need to deter." The first—the seriousness of the risk of harm—is *not* included in the list of

statutory aggravating circumstances in *N.J.S.A.* 2C:44–1(a). Rather, it is a factor that the legislature has incorporated in its gradation of the arson crimes. See *N.J.S.A.* 2C:17–1. For example, if a defendant *"purposely or knowingly* plac[es] another person in danger of death or bodily injury," or if a defendant starts a fire "[w]ith the purpose of destroying a building or structure of another," he or she is guilty of aggravated arson, a second-degree crime. *N.J.S.A.* 2C:17–1(a)(1) and (2) (emphasis added). In contrast, if one *"recklessly* plac[es] another person in danger of death or bodily injury" or "recklessly plac[es] a building or structure of another in danger of damage or destruction," one is guilty only of arson, a third-degree crime. *N.J.S.A.* 2C:17–1(b)(1) and (2) (emphasis added). Necessarily included as an element of either crime is some risk to either person or property. The seriousness of the risk becomes an essential distinguishing factor between them. Because the seriousness of risk is an element of the crime with which defendants were charged, it cannot be counted as an aggravating factor in determining whether the presumption against imprisonment has been overcome. *See State v. Yarbough,* 100 *N.J.* 627, 633 (1985) (facts that the legislature has incorporated into the Code as part of the original grading of the offense are not to be weighed as aggravating and mitigating factors to arrive at the appropriate sentence), *cert.* den., 475 *U.S.* 1014, 106 *S.Ct.* 1193, 89 *L.Ed.*2d 308 (1986); *State v. Pavin,* 202 *N.J.Super.* 255, 267 (App.Div.1985) (on conviction for death-by-auto contrary to *N.J.S.A.* 2C:11–5, death of victim may not be considered an aggravating circumstance in overcoming the presumption against imprisonment); *State v. Link,* 197 *N.J.Super.* 615, 620 (App.Div.1984) (where a specific fact is an essential element of a crime, "that element may not be used as an aggravating factor to impose a custodial sentence that is longer than the presumptive term or to impose a period of parole ineligibility"), certif. den., 101 *N.J.* 234 (1985).

Unlike the "seriousness of the risk of harm," the second aggravating factor relied on by the trial court—"the need to

deter"—is included as a statutory aggravating factor in *N.J.S. A.* 2C:44–1(a)(9), and encompasses two types of deterrence: deterring (a) "the defendant" and (b) "others" from committing crime. In the instant matter, the sentencing court specifically found that in light of these defendants' backgrounds, special deterrence was not a factor. Therefore, to the extent that deterrence is applicable at all in this case, it must be a general deterrence, *i.e.*, the need to deter others from engaging in criminal conduct. We agree with the conclusions reached in both the majority and dissenting opinions below that general deterrence alone is not sufficient to overcome the presumption against imprisonment. See 215 *N.J.Super.* at 89–90, 97. As the dissenting judge below concluded in his separate opinion:

> The presumption would then become merely a "suggestion," since there is positive need in all cases to deter conduct which would constitute a third degree crime. There would be no case in which a trial judge could not by the mere assertion of the need for general deterrence imprison an individual in whose favor the Legislature has directed the presumption of a noncustodial sentence. [*Id.* at 97.]

■ We are uncertain what weight the sentencing court, in arriving at its conclusion that the presumption against imprisonment had been overcome, gave to the "nature and circumstances of the offense and the history, character and condition" of these defendants. As we have observed above, all three defendants led exemplary lives prior to this, their first brush with the law. All three volunteered their services to the community as firefighters, and Gardner and Van Nostrand also served as members of a first-aid squad. All three were relatively young at the time of this incident, and at least Gardner and Schwarz provided financial support to their respective families. Those are all factors that call for the application of the presumption against imprisonment. Yet in an ironic twist, defendants' status as volunteer firefighters—a valuable community service for which they are to be commended—renders especially reprehensible the "nature and circumstances" of this offense, namely, arson. They, perhaps better than anyone, should know the risks to property and life that are attendant to

any fire. Having given their time and efforts to other fires, and having witnessed first-hand the destruction that accompanies fires, it is particularly offensive that these defendants could then purposely torch a building. To that extent, the "nature and circumstances" of the offense weigh in favor of overcoming the presumption.

Given the posture of the case, the sense of uncertainty in respect of the law governing the presumption of non-imprisonment as reflected not only in the sentencing court's comments but in both Appellate Division opinions as well, and the sentencing court's understandable unawareness of the full range of sentencing tools available to it, we are reluctant to rule as a matter of law that the presumption against incarceration was not overcome, even in light of the numerous mitigating factors that apply in these cases. We therefore see it the better course to give the sentencing court the opportunity to reconsider its original determination with the benefit of what we hope is the guidance afforded by this opinion. That court should reappraise its conclusion in respect of the strong presumption against incarceration for these defendants. Should it decide that the presumption has been overcome, it must sentence in keeping with the statutory guidelines. *State v. Hartye, supra,* 105 *N.J.* at 417. If it decides that the presumption of non-imprisonment carries the day, the court may impose a probationary sentence with or without a custodial term as a condition thereof. See *id.* at 417–21. In cataloguing these alternatives we imply no view of their order of fitness or suitability.

### III

Defendants' sentences are vacated. The cause is remanded to the trial court for resentencing consistent with this opinion.

*For remandment*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI, and GARY S. STEIN—7.

*For reversal*—None.