721 A.2d 713

STATE OF NEW JERSEY, IN THE INTEREST
OF D.W., JUVENILE–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted August 18, 1998—Decided October 7, 1998.

Before Judges KLEINER and BRAITHWAITE.

*Ivelisse Torres,* Public Defender, attorney for appellant (*Bernadette N. DeCastro,* Assistant Deputy Public Defender, of counsel and on the brief).

*Lee A. Solomon,* Camden County Prosecutor, attorney for respondent (*Harry S. Collins,* Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

KLEINER, J.A.D.

D.W., born June 12, 1981, was arrested and charged with four separate acts of juvenile delinquency allegedly committed in the company of his adult cousin between October 1 and October 9, 1997, and which, if committed by an adult, would constitute acts of armed robbery contrary to *N.J.S.A.* 2C:15–1.

On October 20, 1997, the State moved for an involuntary transfer ("waiver") of the juvenile proceedings to the Law Division, *N.J.S.A.* 2A:4A–26a; *see also R.* 5:22–2. On January 14, 1998, a probable cause and jurisdictional hearing was held in the Family Part. The judge concluded: (a) there was probable cause to believe D.W. participated in each of the charged offenses; (b) there was a probability that D.W. could be rehabilitated by the time he reached age nineteen through the use of the procedures,

services and facilities available to the court; (3) the probability of rehabilitation substantially outweighed the need for individual deterrence; but, (4) the need for general deterrence could not be accomplished by the time D.W. reached age nineteen because general deterrence would require a lengthy sentence beyond that required for his rehabilitation. The motion judge reached the last conclusion by construing the waiver statute to require the need for general deterrence be both satisfied and completed by the time the juvenile reached age nineteen. Despite the finding that D.W. could fulfill the need for general deterrence by serving an extended term in a juvenile facility, the judge determined that D.W. had not demonstrated the need for general deterrence would be satisfied and completed by his nineteenth birthday, and thus had not shown the probability of rehabilitation substantially outweighed the need for general deterrence.

Based on that conclusion, the judge ordered the proceedings transferred to the Law Division but stayed that order pending appeal. We granted leave to appeal. We reverse and remand to the Family Part for reconsideration of the waiver decision.

I

The evidence presented at the probable cause hearing may be succinctly summarized. Detective Luis Ruiz ("Officer Ruiz") investigated four separate robberies in Camden between October 1 and October 9, 1997. The descriptions given by the four victims were consistent. Each victim described the perpetrators as two young black men, one a teenager and one an older youth. In all four incidents, the older male possessed a handgun. None of the victims indicated that the younger male possessed a weapon.

The first robbery, that of taxi driver Juan R. Quinonnes, occurred on October 1, 1997. The second robbery, involving taxi driver Peter Ashman, occurred on October 6, 1997. On October 9, 1997, Ismael Rodriquez, a juvenile, was robbed at gunpoint while he walked home from a grocery store. Among the items stolen was a pager. On that same date, within forty-five minutes of the

Rodriquez robbery, Deidre Peria[1] was robbed of her purse while walking along a Camden street.

D.W. was arrested on October 9, 1997. With the consent of D.W.'s mother, Officer Ruiz interviewed D.W. and obtained a statement. D.W. admitted that he had been with his nineteen-year old cousin when the four robberies were committed. D.W. indicated that he did not know his cousin had a gun in his pocket during the first robbery. In his statement, D.W. provided the investigating police officers minute and graphic details of each robbery and of the subsequent flight from the scene.

D.W.'s mother also signed a consent to search D.W.'s bedroom for a weapon. No weapon was found, but a pager that reportedly belonged to Ismael Rodriquez was discovered.

Based upon the testimony of Officer Ruiz, the judge concluded that the State had established probable cause as required by *N.J.S.A.* 2A:4A–26(a)(2)(d), specifically: "An offense against a person committed in an aggressive, violent and wilful manner . . . ."

## II

In his written opinion, the motion judge correctly concluded that once the State has met its statutory burden of proof as to the age of the juvenile, *N.J.S.A.* 2A:4A–26a(1), and as to probable cause, *N.J.S.A.* 2A:4A–26a(2), the juvenile has the burden of proof to show that there is both a probability of rehabilitation by the use of the procedures, services and facilities available to the court prior to the juvenile reaching the age of nineteen, and that the probability of rehabilitation substantially outweighs the reasons for waiver, which is deterrence. *N.J.S.A.* 2A:4A–26a(3). If the juvenile fails to meet this burden of proof, waiver is required. *Ibid. See State v. R.G.D.*, 108 *N.J.* 1, 12 n. 4, 527 *A.*2d

---

[1] The record on appeal contains an alternative spelling of the fourth victim's name as Deardra Purrier.

834 (1987) (stating "reasons for waiver" means "deterrence"); *see also State in the Interest of A.J.*, 232 *N.J.Super.* 274, 290, 556 *A.2d* 1283 (App.Div.1989).

We need not recount the "extensive proofs" offered by D.W. to demonstrate the probability of his rehabilitation prior to reaching age nineteen. Suffice to say, those proofs included testimony of his mother; David Carlamere, a youth worker at the Camden County Youth Center who had counseled D.W. on a daily basis between the date of his arrest and the date of the waiver hearing, January 14, 1998; and Dr. Gary J. Kushner, a licensed psychologist. D.W. also submitted his child study team records, a letter from his mother, and two letters from the Superintendent of the Camden County Youth Center. The State offered no evidence to countervail D.W.'s submissions and relied solely upon D.W.'s prior juvenile record in support of its waiver motion.

After reviewing the evidence the motion judge concluded:

[T]his court finds that notwithstanding D.W.'s prior record and the severity of the offenses with which he is now charged, the factual evidence before the court *clearly and convincingly* shows a reasonable and strong probability of his rehabilitation prior to reaching age 19, through the procedures, resources and facilities available to the Family Part. The court's findings in this regard include, in part, what it considers and finds to be the reality that D.W.'s rehabilitation has *already* begun and has been in *continual progress* on a daily basis, ever since his detention at the Camden County Youth Center over three months ago.

(emphasis added).

Despite this very clear finding of the probability of rehabilitation, the motion judge then concluded that the need for general deterrence could not be accomplished by the time D.W. reached age nineteen because general deterrence would require a lengthy sentence beyond that required for his rehabilitation. The judge ordered that D.W.'s pending juvenile proceedings be transferred to the Law Division.

On appeal, D.W. contends that the trial court placed undue weight on the concept of general deterrence. Further, because no age requirement is associated with general deterrence, D.W. argues the court mistakenly construed the statute to require completion of general deterrence by the time the juvenile reaches

age nineteen. D.W. contends the court abused its discretion by deciding to waive D.W. to the Law Division.

We agree. The judge's conclusion engrafted upon the waiver statute, *N.J.S.A.* 2A:4A–26a, as presently enacted, a condition that the juvenile must prove that the needs of general deterrence will be satisfied before reaching age nineteen, a condition which was not imposed by the Legislature and which does not appear to comport with judicial precedent interpreting *N.J.S.A.* 2A:4A–26a.

### III

The decision to refer a juvenile proceeding to the Law Division is statutorily authorized by *N.J.S.A.* 2A:4A–26. The purpose to be achieved by the transfer of proceedings to the Law Division is fully analyzed in the seminal decision, *State v. R.G.D.*, 108 *N.J.* 1, 527 *A.*2d 834 (1987).

Statutorily, "if in any case the juvenile can show that the probability of his rehabilitation by the use of the procedures, services and facilities available to the court prior to the juvenile reaching the age 19 substantially outweighs the reasons for waiver, waiver shall not be granted." *N.J.S.A.* 2A:4A–26a(3). This section of the present statute does not make specific reference to the concepts of general deterrence or individual deterrence. However, case law explains the purpose of the waiver statute as it pertains to deterrence.

In *R.G.D.*, the Court traced the evolution of our present waiver statute. It specifically quoted the Code of Juvenile Justice, *N.J.S.A.* 2A:4–15, providing in part:

If it shall appear to the satisfaction of the juvenile and domestic relations court that a case of juvenile delinquency ... committed by any juvenile of the age of 16 or 17 years, should not be dealt with by the court, either because of the fact that the person is a habitual offender, or has been charged with an offense of a heinous nature, under circumstances which may require the imposition of a sentence rather than the disposition permitted by this chapter *for the welfare of society*, then the court may refer such case to the county prosecutor....

[*R.G.D., supra*, 108 *N.J.* at 6, 527 *A.*2d 834 (quoting *N.J.S.A.* 2A:4–15, *repealed by L.* 1973, *c.* 306 § 27) (emphasis added).]

The original statute, as parsed, demonstrates a legislative concern that a prospective sentence of a juvenile consider the "welfare of society," a term which connotes and encompasses concepts of general deterrence.

The Court in *R.G.D.* noted that *N.J.S.A.* 2A:4–15 was superseded by the enactment of *N.J.S.A.* 2A:4–48. *Ibid.* As revised, a court was permitted to waive the juvenile if it found that:

> "*adequate protection of the public* require[d] waiver" and "that there [were] no reasonable prospects for rehabilitation of the juvenile prior to attaining the age of majority by use of the procedures, services and facilities available to the court." Under that statutory scheme, nonwaiver was to be the rule and not the exception.
>
> [*R.G.D., supra,* 108 *N.J.* at 6–7, 527 *A.*2d 834 (citations omitted) (emphasis added).]

Thus, as noted in *R.G.D.*, the waiver statute, *N.J.S.A.* 2A:4–48, permitted waiver to protect the public when a rehabilitation was unlikely.

Prior to the decision in *R.G.D.*, the Court in *State in the Interest of C.A.H. and B.A.R.*, 89 *N.J.* 326, 446 *A.*2d 93 (1982), in construing the statute, *N.J.S.A.* 2A:4–48, noted the decision to waive a juvenile must consider "the goals of deterrence and punishment, as well as physical security against harm from the offender." 89 *N.J.* at 332, 446 *A.*2d 93. The Court held:

> under the second statutory criterion in *N.J.S.A.* 2A:4–48(c), that to justify waiver there must be "no reasonable prospects" for rehabilitation, two successive determinations may be required. The first is whether rehabilitation can realistically be achieved through available facilities by the time the juvenile reaches age 21.[2] If, but only if, there is a realistic prospect for such rehabilitation, the juvenile court must then determine whether the need for deterrence in the given case outweighs the evidence in favor of rehabilitation.
>
> [*Ibid.*]

Additionally, in discussing the concept of deterrence, the Court noted:

> One of the objectives in treating convicted offenders is to fashion a sentence that will serve to prevent future crime by him as well as by others through its deterrent impact. Thus the concept of deterrence involves the notion of "individual deter-

---

[2] The present statute, *N.J.S.A.* 2A:4A–26, reduced the determinative age from age twenty-one to age nineteen.

rence"—that punishment will dissuade the offender from repeating his criminal acts. It also includes the principle of "general deterrence"—that punishment can "discourage similar wrongdoing by others through a reminder that the law's warnings are real and that the grim consequence of imprisonment is likely to follow from [certain crimes]."

[*Id.* at 334–35, 446 *A.*2d 93 (citations omitted).]

In *C.A.H. and B.A.R.*, the Court noted the "evidential axis"—that is, weighing the need for deterrence against the possibility of rehabilitation—determines the waiver decision. *Id.* at 344, 446 *A.*2d 93. A more serious offense compounded by a background of delinquency, for example, might provide the need for a trial as an adult, while strong evidence of rehabilitation may require the court to retain the juvenile for rehabilitation. *Id.* at 344–45, 446 *A.*2d 93.

In *R.G.D.*, the Court cited the concept enunciated in *C.A.H. and B.A.R.* and specifically stressed: "[P]rotection of the public is not limited to ensuring society's safety or physical security from the offender; rather, *deterrence is a relevant factor in its objective of preventing future criminal conduct by both the juvenile and others.*" *Id.* at 7, 527 *A.*2d 834 (citing *C.A.H. and B.A.R., supra,* 89 *N.J.* at 334, 446 *A.*2d 93 (1982) (emphasis added)).

In the discussion of the evolution of the present statute, *N.J.S.A.* 2A:4A–46, the Court, in *R.G.D.*, noted that *N.J.S.A.* 2A:4–48 was again amended by the enactment of *L.* 1982, *c.* 77–81, which "broadened the class of offenders eligible for waiver and revised the standards for waiver in certain cases." *R.G.D., supra,* 108 *N.J.* at 9, 527 *A.*2d 834. The Court noted the

[l]ikelihood of "rehabilitation" was retained as a factor bearing upon waiver but was made substantially more difficult to establish. The juvenile has the burden of proof on this issue; and must show the probability that he can be rehabilitated as a juvenile prior to reaching the age of nineteen and, further, that the probability of such rehabilitation "substantially outweighs the reasons for the waiver."

[*Id.* at 11, 527 *A.*2d 834 (citations omitted).]

The Court particularly noted the statute required courts to balance the value of probable rehabilitation against the general deterrent value of imposing a more severe punishment. *Id.* at 11–12, 527 *A.*2d 834. In discussing the balancing concept, the Court

noted the Legislature, by imposing a heavier burden on the juvenile, created a stronger presumption favoring waiver for Chart 1 offenders.[3] Thus, the balancing, or the "evidential axis" described in *C.A.H. and B.A.R.*, would be tilted to favor waiver. *Id.* at 11–14, 527 *A.*2d 834. However, in the event "the 'evidential axis' nears balance," the court might consider the underlying concepts of sentencing:

> Although in most cases the penal consequences of adult prosecution will be more severe than available under the Juvenile Code, there may be individual cases in which the likely penal options will not differ markedly; hence reasons for waiver may not be as strong. A publicly articulated disposition, conscious of the necessity of informing the public that the period of incarceration ordered through the juvenile justice system will not be disproportionate to that expected in the adult court, may help effectuate the goal of assuring public confidence by imposing a proportionate sanction while *also invoking the rehabilitative services available to the juvenile court.*
>
> [*Id.* at 12–14, 527 *A.*2d 834 (emphasis added).]

Since *R.G.D.* was decided in 1987, there have been no reported decisions of the Supreme Court construing *N.J.S.A.* 2A:4A–26. Yet, the importance of general deterrence as a sentencing concept has been discussed in two decisions: *State v. Gardner,* 113 *N.J.* 510, 551 *A.*2d 981 (1989), and *State v. Jarbath,* 114 *N.J.* 394, 555 *A.*2d 559 (1989). Although neither case involved an alleged juvenile offender, both decisions are relevant in considering the concept of general deterrence. In *Gardner,* the Court construed statutory aggravating circumstances enumerated in *N.J.S.A.* 2C:44–1 and particularly *N.J.S.A.* 2C:44–1(a)(9), "the need to deter." The Court noted the phrase, "the need to deter," "encompasses two types of deterrence: deterring (a) 'the defendant' and (b) 'others from committing crime.'" *Gardner, supra,* 113 *N.J.* at 519–20, 551 *A.*2d 981. The Court concluded that "general deterrence alone is not sufficient to overcome the presumption against imprisonment." *Id.* at 520, 551 *A.*2d 981 (citing *State v. Gardner,*

---

[3] "Chart 1" offenders are referenced in the Report of the Juvenile Delinquency Disposition Commission more fully discussed in *R.G.D.* and include "murder, robbery, sexual assault and serious offenses set forth in *N.J.S.A.* 2A:4A–26." *R.G.D., supra,* 108 *N.J.* at 12 n. 5, 527 *A.*2d 834.

215 *N.J.Super.* 84, 89–90, 97, 521 *A.*2d 357 (App.Div.1987)). The Court agreed specifically with a portion of the Appellate Division dissent, in which Judge Dreier wrote:

> The presumption [against imprisonment] would then become merely a "suggestion," since there is positive need in all cases to deter conduct which would constitute a third degree crime. There would be no case in which a trial judge could not by the mere assertion of the need for general deterrence imprison an individual in whose favor the Legislature has directed the presumption of a noncustodial sentence.
>
> [113 *N.J.* at 520, 551 *A.*2d 981 (citing *Gardner, supra,* 215 *N.J.Super.* at 97, 521 *A.*2d 357 (Dreier, J., dissenting)).]

The *Gardner* court cautions courts to refrain from justifying imprisonment solely because of its general deterrent value.

In *State v. Jarbath,* the Court concluded:

> Personal and general deterrence are interrelated but distinguishable concepts; a sentence can have a general deterrent effect on the public in addition to its personal deterrent effect on the defendant. *See State in the Interest of C.A.H. & B.A.R.,* 89 *N.J.* 326, 334–35, 446 *A.*2d 93 (1982). Nevertheless, the absence of any personal deterrent effect greatly undermines the efficacy of a sentence as a general deterrent. We have recognized recently that *general deterrence unrelated to specific deterrence has relatively insignificant penal value.*
>
> [*Jarbath, supra,* 114 *N.J.* at 405, 555 *A.*2d 559 (citing *State v. Gardner, supra,* 113 *N.J.* at 520, 551 *A.*2d 981) (emphasis added).]

*Jarbath* suggests the concept of general deterrence is a less significant purpose of sentencing when compared to personal deterrence.

■ The two cases, *Gardner* and *Jarbath,* indicate general deterrence has less importance, when considering imprisonment, as compared to the effect of incarceration on a specific individual.

Applying these concepts to the present appeal, we conclude that the motion judge erred when he ordered D.W.'s juvenile complaints transferred to the Law Division. The judge explicitly concluded that D.W. had clearly and convincingly proved that it was probable that he could be rehabilitated within the juvenile justice system prior to age nineteen. In fact, as noted *supra,* the judge also concluded that "D.W.'s rehabilitation has already begun and has been in continual progress on a daily basis, ever since his detention at the Camden Youth Center over three months ago."

Thus, a sentence of imprisonment as an adult, upon transfer to and conviction in the Law Division, will have no greater *personal* deterrent effect upon D.W. than a sentence within the juvenile sentencing guidelines. This is particularly so, as "[o]ne of the key features of the Code of Juvenile Justice is the *increased* authority of the family court to order incarceration as an appropriate disposition for serious offenders, *N.J.S.A.* 2A:4A–43b, –44d, and in the case of habitual offenders, to pass an extended term to any such disposition. *N.J.S.A.* 2A:4A–44d(3)." *R.G.D., supra,* 108 *N.J.* at 13, 527 *A.*2d 834 (emphasis added). As noted in *Jarbath,* "the absence of any personal deterrent effect greatly undermines the efficacy of a sentence as a general deterrent." *Jarbath, supra,* 114 *N.J.* at 405, 555 *A.*2d 559. The effect of rehabilitation on D.W. himself is paramount when compared to the deterrent effect of D.W.'s imprisonment on the general public.

Moreover, as we noted, *supra, N.J.S.A.* 2A:4A–26a does not impose on a juvenile a statutory requirement that he prove that "general deterrence" will be accomplished prior to reaching age nineteen. General deterrence is an elusive concept. Whereas the probability of rehabilitation may be shown through empirical data, it is doubtful that any juvenile faced with the prospect of waiver to the Law Division would be able to empirically demonstrate that a prospective sentence will, in fact, have a general deterrent effect. Even if general deterrence could be demonstrated evidentially, it is unlikely that any juvenile could demonstrate that general deterrence would be accomplished by age nineteen. We thus conclude that the motion judge erred by preconditioning the waiver decision with a non-statutory prerequisite that D.W. establish that "the need for general deterrence can be fulfilled" by age nineteen.

Reversed and remanded for reconsideration.