# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-6022-17

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

STANLEY R. DAVIS, JR.,

     Defendant-Appellant.

_____

     Argued December 15, 2020 – Decided March 26, 2021

     Before Judges Gilson, Moynihan and Gummer.

     On appeal from the Superior Court of New Jersey, Law Division, Warren County, Indictment No. 14-04-0142.

     John P. Flynn, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; John P. Flynn, of counsel and on the briefs).

     Dit Mosco, Acting Assistant Prosecutor, argued the cause for respondent (James L. Pfeiffer, Acting Prosecutor, attorney; Dit Mosco, of counsel and on the brief).

PER CURIAM

Following the denial of his motions to suppress child-pornography files found on computer equipment in his home and his statement to a Warren County Prosecutor's Office (WCPO) detective after the files were found, defendant Stanley R. Davis, Jr. was found guilty of fourth-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(b)(5)(b), after a bench trial. He appeals from the judgment of conviction and challenges the sentence imposed, arguing:

> POINT I
>
> BY USING A COERCIVE KNOCK-AND-TALK TACTIC AND FAILING TO TELL [DEFENDANT] HE COULD REFUSE ENTRY INTO HIS HOME, THE DETECTIVES EXTRACTED UNKNOWING AND INVOLUNTARY CONSENT TO SEARCH FROM [HIM].
>
> POINT II
>
> [DEFENDANT'S] STATEMENT SHOULD HAVE BEEN SUPPRESSED BECAUSE THE DETECTIVES DID NOT APPROPRIATELY CLARIFY WHETHER [HE] UNDERSTOOD HIS MIRANDA[1] RIGHTS PRIOR TO WAIVING THEM.
>
> POINT III
>
> THE TRIAL COURT IMPOSED A MANIFESTLY EXCESSIVE 364-DAY JAIL TERM AND FIVE YEARS' PROBATION ON THIS FIFTY-SEVEN-YEAR-OLD FIRST-TIME OFFENDER.

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

Unpersuaded, we affirm.

Defendant came to the attention of Warren County law enforcement officers when then-Lieutenant Richard Gould of the Essex County Prosecutor's Office Cyber Crimes Unit informed WCPO Detective Sergeant Derek Michael Kries that a computer with an IP address subscribed to by an individual at defendant's residence contained child pornography files. Kries, Gould, Detective Sergeant John Amey of the Hackettstown Police Department, WCPO Detective Dawn Dalrymple and two other detectives traveled to defendant's residence at approximately 5:45 a.m. to conduct a planned knock and talk. The detectives did not have a search warrant.

While the other detectives remained out of sight, Gould, Amey and Dalrymple knocked on defendant's door and asked if they could enter. After defendant granted them entry, Dalrymple advised defendant that police had information about unlawful computer files and presented defendant with a consent-to-search form for the computers in his home. Dalrymple read the form aloud to defendant. Defendant signed the form at 6:20 a.m.

I

Defendant argues the trial judge erred because he did not consider that the officers had failed to advise defendant he had the "right to refuse consent to

3

enter his home for the purpose of a search," rendering the consent search "constitutionally invalid" thus requiring the suppression of all seized evidence. Though the record on appeal does not contain defendant's brief to the trial judge, as is proper under Rule 2:6-1(a)(2), we do not see any mention of that argument during the motion hearing or in the judge's oral decision. Our review is generally limited to the matters addressed by the trial judge. See State v. Witt, 223 N.J. 409, 419 (2015) (noting parties must raise an issue before the trial court to allow an appellate court to review it); Toll Bros., Inc. v. Twp. of W. Windsor, 173 N.J. 502, 539 (2002) (noting courts should be "reluctant to review matters . . . in any case where a record had not been fully developed by the parties in the trial courts"). This record, however, is sufficiently developed to allow our full review, see State v Scott, 229 N.J. 469, 480 (2017) (reviewing a bias argument raised for the first time on appeal because, unlike in Witt, the record was "fully developed"), in which we give deference to the trial judge's factual findings, State v. Gonzales, 227 N.J. 77, 101 (2016), and uphold them if they are supported by sufficient credible evidence in the record, State v. Minitee, 210 N.J. 307, 317 (2012). We will disturb those findings only if they were "so clearly mistaken 'that the interests of justice demand intervention and correction,'" State v. Elders, 192 N.J. 224, 244 (2007) (quoting State v. Johnson,

4

42 N.J. 146, 162 (1964)). We review de novo the judge's application of factual findings to the law. State v. Gamble, 218 N.J. 412, 425 (2014).

Defendant's argument rests on the false premise that police had the obligation to advise defendant he had the right to refuse when they requested entry to his residence. "A 'knock and talk' [is an investigative procedure that] occurs when the police knock on [a defendant's] door, make contact with [him or her], ask if they may enter to talk about their concern, and once inside, ask permission to search the premises." State v. Domicz, 188 N.J. 285, 317 n.1 (2006) (Wallace, J., concurring and dissenting). Our courts have upheld this tactic as a constitutionally permissible investigative procedure, see id. at 302-03; see also State v. Williams, 461 N.J. Super. 80, 101-02 (App. Div. 2019), cert. denied, 241 N.J. 92 (2020) (upholding police use of a knock and talk), so long as the knock and talk is not being used simply as "a pretext to gain access to the [premises and] conduct an unconstitutional search," State v. Davila, 203 N.J. 97, 130 (2010).

Unlike the police in Davila, where our Supreme Court ordered a remand because it viewed the knock-and-talk procedure as a pretext to gain access to the defendant's apartment to conduct a warrantless protective sweep—a search—of the premises, 203 N.J. at 130, nothing in the current record suggests the

A-6022-17

detectives went to defendant's apartment with the hope of carrying out an unconstitutional search of his home. Instead, they went with the purpose of obtaining defendant's consent to search: an exception to the warrant requirement. State v. Coles, 218 N.J. 322, 337 (2014).

The detectives did not conduct the search until defendant—advised that he had the right to refuse consent to search—signed the consent-to-search form. Thus, defendant's protections against unreasonable searches and seizures, U.S. Const. amend. IV; N.J. Const. art. I, § 7, were not implicated or violated by the mere invited entry into his home—not to search, but to talk. See Domicz, 188 N.J. at 302 ("[W]hen a law enforcement officer walks to a front or back door for the purpose of making contact with a resident and reasonably believes that the door is used by visitors, he is not [acting] unconstitutionally[.]").

Defendant's decision to voluntarily admit the detectives into his residence "was the same as that of any other social guest or business visitor." The police entry into his home, therefore, did not constitute a search. See State v. Pineiro, 369 N.J. Super. 65, 73 (App. Div. 2004) (reasoning, because the defendant "voluntarily admitted" police into his apartment, their entry "was the same as that of any other social guest or business visitor, and did not constitute a Fourth Amendment search"); see also State v. Padilla, 321 N.J. Super. 96, 108 (App.

Div. 1999) (holding police did not need to inform defendant of her right to refuse entry into her motel room, given they "merely sought permission to enter to continue their investigation"). Even in <u>Williams</u>, where the pertinent issue raised by the defendant was whether her "consent to search was tainted by the prior unlawful entry, sweep, and seizure of the apartment," 461 N.J. Super. at 93, we agreed with the trial judge that the officers "did have a legitimate purpose to be present at the scene," and "[b]ecause the officers obtained consent to enter the apartment and were 'lawfully within private premises for a legitimate purpose,' . . . their presence in the apartment was constitutionally permissible, and satisfied the first element of a protective sweep," <u>id.</u> at 102 (quoting <u>Davila</u>, 203 N.J. at 102). We concluded under those circumstances, "there was no requirement that defendant be advised of her right to refuse entry to the police." <u>Id.</u> at 101.

Defendant's reliance on <u>State v. Legette</u>, 227 N.J. 460 (2017), is misplaced. The Court in <u>Legette</u>, declining to "expand the scope of investigatory stops to encompass police entry into [a defendant's] home" prior to his or her arrest, determined the officer did not gain access to the premises by getting the defendant's consent. 227 N.J. at 473-75. Rather, he gained access by virtue of his exercise of authority over the defendant, <u>id.</u> at 474-75, by

approaching the defendant after receiving a noise complaint and then noticing the smell of burnt marijuana; stopping the defendant as he left the porch and began walking to his car; asking for identification which the defendant said "was in his apartment and volunteered to retrieve it"; and telling "defendant that he would have to accompany him to his apartment under the circumstances. Defendant did not respond and continued walking upstairs," id. at 464 (emphasis added). The officer did not seek defendant's permission to enter the residence, nor did he inform defendant of his right to refuse entry. See ibid.

Here, defendant consented to the entry. The trial judge credited Dalrymple's and Amey's testimony and found "defendant invited them in and never asked them to leave," describing "his demeanor as welcoming, calm and cooperative." Under the circumstances, police were not required to advise defendant he could refuse their entry. Thus, we reject defendant's contention that his consent to search stemmed from the detectives' illegal entry into his home.

We also note the search was conducted only after defendant had signed the consent-to-search form, which was read aloud to him, and police had advised him of his right to refuse consent to the search. As we determined in Williams,

> even if the initial entry . . . [was] unlawful, the [evidence] seized was not located as a result of [that

entry]. Instead, [it] was found as a result of defendant's consent to search, which was obtained independent of the initial entry[.] Therefore, . . . the seizure [of the evidence] did not arise either directly or indirectly, [as a result of] any unlawful police activity proscribed under the fruit of the poisonous tree doctrine.

[461 N.J. Super. at 105.]

Defendant also argues the totality of the circumstances established his consent was not knowing and voluntary. We disagree. Nothing in the record suggests the detectives threatened or coerced defendant to consent to the search of his computer. Defendant was not under arrest at the time of the entry or consent; he did not offer his consent after multiple denials of guilt; and he did not withdraw his consent or ask the detectives to leave at any point during his initial discussions with police, the search of his computer, or during his formal statement. See State v. King, 44 N.J. 346, 352 (1965) (measuring the voluntariness of a defendant's consent requires the court to consider, in part, whether: the defendant was under arrest at the time of consent; the consent was obtained after multiple denials of guilt; and the defendant attempted to revoke his or her consent at any point during the search).

The trial judge found the detectives' testimony credible, rejecting defendant's claim, reiterated on appeal, that the officers' presence coerced or

intimidated defendant to sign the consent-to-search form. The judge found the form

> specifically identified the Dell laptop but also included all hard drives, computer memory and removable computer media. The consent form also specifically states that defendant could withdraw [h]is consent at any time. After consent was obtained the third detective began to preview his computers. Again, by testimony of both Amey and Dalrymple defendant never withdrew his consent.

And the judge found defendant had signed the form after it had been read to him and he had been advised he did not have to consent. The record is barren of any evidence that defendant did not understand the plain language of the form. The judge's denial of defendant's motion to suppress physical evidence was supported by the evidence; we see no reason to disturb that decision.

II

Defendant also challenges the trial judge's denial of his motion to suppress the audio-recorded statement given to Detective Kries, in the presence of Detective Dalrymple and Lieutenant Gould, after defendant had signed the consent-to-search form. Kries read each Miranda right aloud to defendant and, after each, asked defendant if he understood that right; defendant affirmatively answered each of those questions. When Kries asked defendant if, "having [his]

10

rights in mind," defendant wanted to speak to Kries regarding the investigation.

The following colloquy ensued:

> [Defendant]: I have no problems speaking with you I will have a question of, is this something that I do need legal counsel for, is this something I don't need legal counsel for
>
> [Detective Kries]: well as
>
> [Defendant]: I, I, I know you're going to tell me that you can't tell me that
>
> [Detective Kries]: that's correct
>
> [Defendant]: but I mean I, I don't know what I've done wrong that, maybe I'm
>
> [Detective Kries]: ok well
>
> [Defendant]: I'm overseeing the picture, I'm seeing too much into the picture
>
> [Detective Kries]: ok well I, again I told you that before you asked me, is this something prior, . . . when I asked you will you provide a recorded statement you asked me you know is this something that I'll need an attorney for and I explained to you that I can't give you any legal advi[c]e, I can basically tell you the reason that we're here, we're, we're here investigating you know child pornography, at this point you know you're a suspect in that investigation
>
> [Defendant]: ok
>
> [Detective Kries]: um you know, there's not any criminal charges filed at this time, however I'm not

11

telling you that there's not going to be criminal charges filed, there is a possibility of that, um you know I don't make that decision, that's you know left up to the assistant prosecutors—we're here investigating that and you know we're gonna take information back to them so as far as you know with regards to an attorney, that's a decision that you know you have to make, that's not something that I can make for you um

[Defendant]:  yeah I know, ok

[Detective Kries]:  ok

[Defendant]:  I, I, I uh (inaudible) said, I am sort of in the loss on this that's why I'm asking questions

[Detective Kries]:  no and I understand that and I encourage you if you do have questions to ask us um so just for clarification at this point and time, do you want an attorney or would you like to speak with us

[Defendant]:  nah I, I will, I'll speak with you I have no problem with that[.]

Defendant argues his question to Kries "cast doubt on whether he understood his Miranda rights," and Kries's failure to clarify defendant's understanding rendered the waiver of those rights ineffective.  Again, we see nothing in the record of oral argument or in the trial judge's decision that that issue was previously raised in the Law Division.  Defendant's counsel argued to the trial judge suppression was warranted because defendant had invoked his right to counsel and the totality of the circumstances were coercive.  The judge

12

considered: defendant's age; his "above-average intelligence"; the detailed nature of the Miranda warnings; that the three-hour length of defendant's interaction with police and the nearly one-hour-long statement was "certainly not excessive"; that police did not employ "threats, trickery or persuasion or pressure"; and that "defendant was a fire chief who was familiar with police." The judge concluded "under the totality of the circumstances . . . [defendant's] statement was made freely, knowingly and voluntarily" because he had been "read his rights[,] . . . confirmed that he would speak with the officers and specifically didn't have a problem not having a . . . lawyer."

As stated, our review is limited to the matters addressed by the trial judge, see Witt, 223 N.J. at 419, but, again, the record is sufficiently developed to allow our full review, see Scott, 229 N.J. at 480, under the same standard we utilized in considering defendant's challenge to the denial of his motion to suppress physical evidence.

First, as the trial judge found, defendant was read each of the Miranda rights, including that he had "a right to talk with an attorney at any time and to have [the attorney] with [him] before any questioning and during questioning[.]" He said he understood each right.

13                                          A-6022-17

Further, we do not agree with defendant's contention that Kries should have repeated the Miranda warnings after defendant asked if "this [is] something that [he needed] legal counsel for[?]" and that Kries "could have made clear . . . that the interrogation would cease if [defendant] wanted to consult with a lawyer." Repeating that defendant had the right to an attorney or that questioning would cease if defendant invoked that right would not have answered defendant's question if he needed a lawyer. Instead Kries correctly advised defendant, as he had done previously, he could not "give [defendant] any legal advi[c]e, [but could] basically tell [defendant] the reason" the detectives were there: "investigating . . . child pornography," and that defendant was then "a suspect in that investigation." Before questioning defendant, Kries encouraged defendant to ask any questions and asked defendant, "just for clarification at this point and time, do you want an attorney or would you like to speak with us[?]" Defendant did not let Kries finish the question and answered, "nah, . . . I'll speak with you[;] I have no problem with that[.]"

Following defendant's request for advice, Kries's interrupted request for clarification made clear that the alternative to speaking with police was to invoke the right to counsel. As our Supreme Court reasoned in State v. Alston, 204 N.J. 614, 628 (2011), "because the detective [in that case] was not obligated

14                                                                          A-6022-17

to give [the] defendant advice about whether he should assert any of his rights, we cannot fault his choice of words as he sought to clarify [the] defendant's requests while avoiding giving him the advice he was seeking." As was the case in Alston, Kries's "response was a fair recitation of the right to counsel and the right to have the interrogation cease." See ibid. The record supports that defendant knowingly, intelligently and voluntarily waived his fully comprehended Miranda rights.

We determine defendant's remaining arguments on the Miranda issue, including that the detective was "subtly misleading [when he told defendant that there were no charges filed against him] because the officers were surely going to arrest [defendant] at some point based on the files they had just found" on his computer, to be without sufficient merit to warrant discussion. R. 2:11-3(e)(2). The detective told defendant he was a suspect in the investigation and there was a possibility that charges would be filed against him.

III

Defendant claims his five-year probationary sentence, conditioned on incarceration for 364 days, was manifestly excessive for the fourth-degree crime, considering he was a fifty-seven-year-old first-time offender, with a twenty-seven-year career of community service.

The trial judge found aggravating factor three, N.J.S.A. 2C:44-1(a)(3), there was a high risk that defendant would reoffend, because he: did not accidentally download the child pornography files; accumulated the files over a prolonged period of time on three separate occasions; and did not seek professional help toward rehabilitation. The court also found aggravating factor nine, N.J.S.A. 2C:44-1(a)(9), the need to deter defendant and others from violating the law, based on the need for general and specific deterrence of child pornography, and to promote the protection of children.

The court also found mitigating factor seven, N.J.S.A. 2C:44-1(b)(7), based on the fact that defendant had no prior history of delinquency or criminal activity and led a law-abiding life for fifty-seven years, and mitigating factor ten, N.J.S.A. 2C:44-1(b)(10), noting that "if [defendant] does get the psychosexual and mental health evaluation and help that he needs, then [the court] think[s] he will be amenable to probation." The court ultimately afforded substantial weight to the aggravating factors and found they preponderated over the mitigating factors, giving slight weight to mitigating factor ten.[2]

---

[2] The court did not specify the weight it attributed to mitigating factor seven.

Defendant contends the trial court "mistakenly exercised its discretion in giving too little weight to mitigating factors seven and ten and in concluding that the aggravating factors preponderated."

Our review of the trial court's sentencing determination is limited. See State v. Gardner, 113 N.J. 510, 516 (1989). "[A] sentence imposed by a trial court is not to be upset on appeal unless it represents an abuse of the [trial] court's discretion." Ibid. Accordingly, on appeal, our only function is to:

> (a) review sentences to determine if the legislative policies, here the sentencing guidelines, were violated; (b) review the aggravating and mitigating factors found . . . to determine whether those factors were based upon competent credible evidence in the record; and (c) determine whether, even though the court sentenced in accordance with the guidelines, nevertheless the application of the guidelines to the facts of this case makes the sentence clearly unreasonable so as to shock the judicial conscience.
>
> [State v. Lawless, 214 N.J. 594, 606 (2013) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).]

As a general matter, "[a]n appellate court is bound to affirm a sentence, even if it would have arrived at a different result, as long as the trial court properly identifies and balances aggravating and mitigating factors that are supported by competent credible evidence in the record." State v. O'Donnell, 117 N.J. 210, 215 (1989); see also State v. Natale, 184 N.J. 458, 489 (2005).

17

In view of the trial court's detailed analysis of defendant at the time of sentencing, we discern no reason to reverse the sentence imposed. The court recognized defendant's lack of criminal history in considering mitigating factor seven, and also "the fact that [defendant] incurred no new charges and maintained employment during the six-year pendency of th[e] case," noting, "[d]uring the years since the case has worked its way through the [c]ourt system and gone to trial, [defendant] has regained employment." The court, however, found more compelling that defendant had not participated in "any rehabilitation or counseling . . . since the commission of the offense. A true test of whether a defendant is likely not to . . . re-offend will take place in the coming months and years after the sentence has been imposed."

Defendant's contention that the court's imposition of counseling or treatment as a condition of probation would have supported a weightier mitigating factor ten ignores our Supreme Court's mandate that in weighing aggravating and mitigating factors, "a defendant should be assessed as he stands before the court on the day of sentencing," including his post-offense conduct. State v. Jaffe, 220 N.J. 114, 116 (2014); see also State v. Randolph, 210 N.J. 330, 354 (2012). Defendant had not undertaken any therapy or counseling for his psychosexual issues or any other underlying factor that contributed to his

A-6022-17

offense.  A court-imposed condition of probation requiring same would not have impacted on the weight given to mitigating factor ten; future programs do not manifest that he would have been "particularly likely to respond affirmatively to probationary treatment."  N.J.S.A. 2C:44-1(b)(10).  Likewise, they would not, contrary to defendant's argument, have "ameliorate[d] the concerns that animated the court's finding of aggravating factor three, that [defendant] was drinking on a daily basis and had not sought professional help."

We find no reason to disturb the trial court's findings of aggravating and mitigating factors as they are supported by competent evidence in the record, or the exercise of its broad discretion in fashioning the appropriate sentence that conforms to the sentencing guidelines and is not shocking to the judicial conscience.  See Lawless, 214 N.J. at 606.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-6022-17